# In the United States Court of Federal Claims

No. 18-1191C & No. 18-1690C
**CONSOLIDATED**
(Filed: January 16, 2019)
**\*Opinion originally filed under seal on January 9, 2019**

| | | |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| MANTECH ADVANCED SYSTEMS INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | Bid Protest; Pre-award Protest; Judgement on the Administrative |
| v. | ) ) | Record; Material Error; Obvious, Clerical Error; Clarifications; Unequal |
| THE UNITED STATES, | ) ) | and Unfair Treatment; FAR 15.306(a). |
| Defendant. | ) ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) ) | |
| LEIDOS INNOVATIONS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

*John Hunter Bennet,* Washington, D.C., for plaintiff ManTech Advanced Systems International, Inc. *Jason A. Carey*, *Evan R. Sherwood*, and *Andrew R. Guy*, Washington, D.C., of counsel.

*Rebecca Elizabeth Pearson*, Washington, D.C., for plaintiff Leidos Innovations Corporation.  *Emily A. Unnasch*, *Spencer P. Williams*, Washington, D.C., and *J. Scott Hommer, III*, Tysons Corner, VA, of counsel.

*Joshua Ethan Kurland* and *Sosun Bae,* Civil Division, United States Department of Justice, Washington, D.C., with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, for defendant. *Barry C. Hansen* and *Christopher W. Radcliffe*, Assistant General Counsel, U.S. Department of Justice, Justice Management Division, Office of General Counsel, Washington, D.C., of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*

Pending before the court are two related pre-award bid protests brought by

ManTech Advanced Systems International, Inc. ("ManTech") and Leidos Innovations

Corporation ("Leidos") against the United States ("government") in connection with the

decision of the Department of Justice ("DOJ") to eliminate each from consideration for

award of one of DOJ's Information Technology Support Services ("ITSS") multiple

award contracts under Solicitation, No. DJJP-17-RFP-1022 ("RFP" or "solicitation"). AR

638-639. Offerors were advised in the RFP that DOJ would be evaluating their proposals

in two phases. In Phase 1, DOJ would identify the most highly-rated proposals based on

five technical factors and price. In Phase 2, the most highly-rated proposals would be

evaluated based on their responses to a sample task order.

ManTech was eliminated from the competition in Phase 1 after DOJ determined

that ManTech, a current incumbent, was not among the most highly rated proposals

because ManTech had included a cost category for Program Management that was not

identified in the RFP. AR 2893. Leidos was eliminated from consideration after ManTech

had filed the pending bid protest in this court and pointed out to DOJ that Leidos had

been allowed to remain in the competition even though Leidos had failed to include a

dollar amount for a required labor unit in its price proposal. DOJ agreed with ManTech that keeping Leidos in the competition was in error and upon review by the Contracting Officer ("CO"), Leidos was also eliminated from the competition. AR 4238-40.

In its complaint and motion for judgment on the administrative record, ManTech claims that DOJ's decision to exclude ManTech from the ITSS competition was arbitrary and capricious and an abuse of DOJ's discretion on the grounds that the error leading to its elimination should have been viewed as an obvious, clerical error and thus DOJ should have sought a clarification before it eliminated ManTech from the competition. ManTech also claims that to the extent the inclusion of the price category was not an obvious, clerical error but could only be corrected through discussions, DOJ acted arbitrarily and capriciously and abused its discretion by eliminating ManTech when DOJ allowed other competitors with pricing problems to advance to Phase 2 of the competition.

In its complaint and motion for judgment on the administrative record, Leidos claims that DOJ was arbitrary and capricious by eliminating Leidos from the competition when Leidos' proposal complied with the requirements of the RFP. Specifically, Leidos argues that DOJ should have understood that the blank in its pricing proposal should have been read as "$0.00."[1] In the alternative, Leidos claims that to the extent DOJ did not

---

[1] This opinion was originally filed under seal. On January 15, 2019, the parties submitted their request for redactions. To the extent that both plaintiffs sought to redact all information taken directly from their proposals, the court does not accept the plaintiffs' proposals. The United States Court of Appeals for the Federal Circuit has held that "a presumption of public access to judicial records" exists. *Baystate Techs., Inc. v. Bowers*, 283 F. App'x. 808, 810 (Fed. Cir. 2008)

understand Leidos' proposal, DOJ should have sought a clarification from Leidos. Finally, Leidos argues that eliminating Leidos from the competition was arbitrary and capricious and an abuse of discretion because other offerors also had pricing problems with their proposals but were allowed to proceed to Phase 2 of the competition.

For the reasons that follow, the court finds that DOJ was not arbitrary or capricious nor did DOJ abuse its discretion in deciding to eliminate ManTech from the competition. The court finds that DOJ was not arbitrary or capricious and did not abuse its discretion in failing to read ManTech's inclusion of an additional price category as an obvious, clerical error or in failing to seek a clarification. The court finds that DOJ did not treat ManTech unfairly or unequally as compared to other offerors. Thus, ManTech's motion for judgment on the administrative record is **DENIED** and the government's motion for judgment on the administrative record is **GRANTED**. The court also finds

---

(citation omitted). Even where information may be protected, redactions are not appropriate where the information is fundamental to the court's opinion. *See, e.g., CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698 n.1 (2011), *aff'd*, 475 F. App'x 341 (Fed. Cir. 2012). The court is not persuaded that including portions of ManTech and Leidos' proposal essential to this opinion would give competitors an unfair advantage in a manner that would rebut the presumption of public access to court records. Additionally, this court has on several previous occasions disclosed publicly elements of the protestor's proposal similar to the sections disclosed here. *See Bus. Integra, Inc. v. United States*, 116 Fed. Cl. 328, 331-32 & n.5 (2014) (discussing a protestor's omission of labor rate pricing information for certain spreadsheet entries); *St Net, Inc. v. United States*, 112 Fed. Cl. 99, 104 (2013) (disclosing that a protestor failed to populate pricing information for certain line items); *Allied Tech. Grp. v. United States*, 94 Fed. Cl. 16, 23 n.1, 43-44 (2010) (discussing redactions generally and quoting specific proposal provision at issue), *aff'd*, 649 F.3d 1320 (Fed. Cir. 2011). The court accepts the government's proposed redactions to remove the names of third-party offerors, dollar figures of the Independent Government Cost Estimate, and the total number of proposals selected for Phase 2. It also accepts ManTech's proposed redaction to remove language in Section 1.3.5 of its proposal unnecessary to this opinion, information about the preparation of ManTech's bid, and the name of one of ManTech's Vice Presidents. The court also accepts Leidos' redaction to remove copies of the Tables Leidos submitted with its offer.

that DOJ was not arbitrary or capricious and did not abuse its discretion in deciding to eliminate Leidos from the competition. The court finds that DOJ was not arbitrary or capricious and did not abuse its discretion in failing to read Leidos' blank on the pricing sheet to mean $0 or in failing to seek a clarification. The court also finds that DOJ did not treat Leidos unfairly or unequally as compared to other offerors. Thus, Leidos' motion for judgment on the administrative record is **DENIED** and the government's motion for judgment on the administrative record is **GRANTED**.[2]

## I.   FACTUAL BACKGROUND

### A.   DOJ's Request for Proposals

DOJ issued the subject RFP No. DJJP-17-RFP-1022 on February 22, 2017. AR 635. The RFP was issued for a Multiple Award, Indefinite Delivery, Indefinite-Quantity ("IDIQ") contract to procure ITSS. The procurement was issued pursuant to Federal Acquisition Regulation ("FAR") Part 12 (Acquisition of Commercial Items) and contemplates the award of multiple IDIQ contracts for various ITSS purposes. AR 638-39; AR 6. The procurement's principal purpose "is to provide professional, non-personal, labor hour services which cover a wide range of Information Technology (IT) related tasks and processes[.]" AR 678. The awarded contracts will have a base period of performance "from the date of award through September 30, 2022" and one "five-year Option Period that may be exercised at the unilateral discretion of the Government." AR

---

[2] The court also **GRANTS** ManTech's December 7, 2018 motion to file its supplemental brief (ECF No. 37). The court finds that the parties had the opportunity to respond to ManTech's supplemental brief in the oral argument held on December 14, 2018.

667. Some of the work will be performed at the government's site and some work will be performed at the contractor's site. AR 639. Proposals were due by June 5, 2017. AR 710.

The subject procurement involves both a Service-Disabled Veteran Owned Small Businesses ("SDVOSB") track and an unrestricted track open to all other offerors. AR 672. DOJ contemplates awarding twelve contracts, six for each track. AR 725. While there are no "specific maximum quantities/amounts" for the contracts, the RFP stated that DOJ "will order a minimum of **$5,000** for every contract awarded" and the "maximum aggregate amount of all the task orders issued under all the ITSS-5 contracts shall not exceed **$1,600,000,000**." AR 680. ManTech and Ledios' protests arise in connection with proposals submitted for the unrestricted track.

As noted, the RFP provides for a 2-phase evaluation approach. AR 710. Phase 1 "consists of the offeror's submission of information regarding 1) Corporate Experience, 2) Past Performance, 3) Architectural Attributes Experience, 4) Management, 5) Technical Certifications and 6) Price." *Id.* (emphasis removed). In Phase 2, the "most highly rated proposals" will be evaluated based on sample task quotations and technical capacity. AR 710-11. The two phases are connected because "Pricing submitted in Phase 1 . . . will be used for evaluation in Phase 2" and "only technical information will be solicited" in Phase 2. AR 711 (emphasis removed).

The RFP stated that the government "reserves the right to award without discussions" and that "[i]f it is later determined by the Contracting Officer that discussions are necessary, offerors will have an opportunity to submit final proposal

revisions[.]" *Id*. The RFP makes it clear, however, that discussions, if conducted, will be conducted after Phase 2 and not in Phase 1. Clarifications are not considered discussions within the meaning of FAR Part 15." AR 46.[3]

In Phase 1, offerors were required to submit various electronic files, including one for price which was to include a narrative proposal, supporting tables, and certifications.[4] AR 712. The narrative portion of the price proposal was to include the names of authorized individuals, a confirmation that the "proposal is in complete compliance with the terms and conditions of [the] RFP[,]" a description of "any assumptions used to develop the proposal[,]" and a confirmation in writing that the offeror takes "no exceptions or deviations to/from the RFP." AR 720. The RFP stated that if there were "any exceptions and/or deviations made to/from the RFP, the offeror shall describe them." *Id.*

Section 6 of the RFP stated with regard to price proposals, that certain management costs could not be charged to DOJ. AR 666-67. Specifically, the RFP stated that "[t]he Contractor is expected to provide competent overall contract management; this management is not separately billable to the Government, apart from the Program Manager when funded by DOJ under a task order." AR 667. The RFP further stated that "the Contractor is required to provide administrative and logistical services as part of its

---

[3] FAR 15.306(a) provides for "Clarifications and award without discussions." Clarifications are defined as "limited exchanges."

[4] The requisite certifications were provided in the RFP. *See* AR 728-745.

normal business operations and overhead; in most cases these administrative and logistical services are not separately billable." *Id.*; *see* AR 681 ("The unit prices shall include factors for management and administration duties . . . .").

Additionally, under Section 19 of the RFP, offerors were required to submit a proposed per unit price for various labor categories and Handling Charge Factors ("HCFs") using pricing tables that were attached to the RFP in the form of a Microsoft Excel file. The RFP reiterated in four separate locations the requirement that offerors fill in all necessary labor rates.  First, the RFP stated that the tables "shall be fully completed by the offeror and must price all forty-nine (49) DOJ labor categories  . . . ." AR 717. Second, the RFP stated that "Table 19-1 pricing tables must include fully burdened and fixed hourly unit prices, to include profit, for all forty-nine (49) mandatory labor categories as set forth in this solicitation." AR 718. Third, the RFP stated that "[t]o be considered for award, the offeror must submit unit prices, ceiling multipliers, and HCFs that comply with the requirements of Section 19." AR 726. Fourth, the RFP stated most importantly that "[o]ffers failing to propose [unit prices] on all mandatory forty-nine (49) CLIN categories for all five (5) years of the base period will receive no further consideration and will be eliminated from this evaluation." AR 726. In addition to these four aforementioned statements, the tables attached to the RFP also instructed the offeror to fill in all the white cells on the spreadsheets. AR 757. Finally, in this connection, the RFP stated that "[a]ll prices and handling charge factors shall . . . [b]e limited to <u>two (2) decimal places</u> for Pricing Tables 19-1 and 19-3 (i.e. dollars and cents)." AR 719. The

RFP further clarified that offerors "must input the resulting dollars and cents as values in Table 19-1. . . ." *Id.*

The RFP presented offerors with seven pricing tables. The tables relevant to Leidos' and Mantech's protests include: Table 19-0 which "provided the DOJ's estimated annual hours quantity for each of the fifty (50) DOJ labor category Contract Line Item Numbers (CLINs)"[5] and the "estimated hours distribution within each DOJ labor category CLIN between the Basic Level (B), Senior Level (S), Principal Level (P) and Subject Matter Expert Level (SME) within each labor category CLIN as applicable." AR 718. The RFP stated that Table 19-0 could "not be altered by the Offeror in any way." *Id.* The RFP indicated that the "split of total estimated hours per labor category is for evaluation purposes only and may differ during actual performance of the contract." *Id.* Table 19-0, attached to the RFP, had some labor categories where DOJ had not included estimated hours and two labor categories where the estimated hours were noted as "0" hours. AR 765. The two labor categories with zero estimated hours were the basic and senior level administrative specialist positions located at the contractor's site. *Id.*[6] The

---

[5] The RFP indicated that offerors were required to propose prices on forty-nine categories, but Table 19-0 included an additional category titled "expert consultants" which was actually not a fixed price and was not included in the subsequent tables. *See* AR 765.

[6] The role of the administrative specialist is defined in the RFP to be someone that "[p]erforms office administration, contract administration and facility operation activities. Assists in all business, cost containment, and accounting activities. Provides cost control advice to management. Prepares correspondence and maintains filing and tracking system for easy retrieval. Maintains calendar of management activities. Assists in preparing management progress reports." AR 777. The RFP indicated that offers were to include labor hourly rates for the basic and senior level administrative specialist. AR 780.

cells on the spread sheet without any estimated hours were identified as red cells, and the RFP included an instruction on the table stating that "Red Cells will Have No Estimated Hours and ARE NOT to be priced." *Id.* The basic and senior level administrative specialist positions at issue in Leidos' protest did not correspond to those red cells but corresponded to cells that required prices. Table 19-0 is reproduced in the appendix to this opinion.

Table 19-1 was composed of Tables 19-1.1 and 19-1.2. These tables provided "cells for the Offeror to 'bid' its fully burdened and fixed hourly rates (including profit) for work to be performed" for each base period of the contract. AR 718 (emphasis removed). The RFP clarified that "Table 19-1 pricing tables must include fully burdened and fixed hourly unit prices, to include profit, for all forty-nine (49) mandatory labor categories as set forth in this solicitation." *Id.* Table 19-1.1 was for the hourly rates for work to be performed on the "[g]overnment's various sites in the greater Washington, DC" area, and Table 19-1.2 was for the hourly rates for work to be performed "at the Contractor's various sites in the greater [Washington, DC] area." *Id.*[7] The first two pages of Table 19-1.2 are reproduced in the appendix to this opinion.

Table 19-3, composed of Tables 19-3.1 and 19-3.2, was included to provide the "Total Evaluated Price - Proposed" that corresponds to the values in Tables 19-1.1 and 19-1.2. AR 719-20. It is clear from the RFP that the values in these tables would be auto-

---

[7] RFP Table 19-2 was for "other direct costs (ODCs) and Handling Charge Factors (HCFs)." AR 756.

populated with values based on what the offeror entered in Tables 19-1.1 and 19-1.2 (the hourly labor rates) and what the DOJ provided in Table 19-0 for the estimated labor hours.[8] Table 19-3.3 included government information "to determine the handling charge amount" and "does not require Offeror/Contractor completion of any kind" because it was based on data in Table 19-2. AR 720. The RFP thus stated that the "19-3.3 tables do not require Offeror/Contractor completion of any kind and are not to be altered by the Contractor in any way." AR 719-20. Table 19-3.2 is reproduced in the appendix to this opinion.

Accordingly, only Tables 19-1.1 and 19-1.2 required completion and each stated at the top of the Table: "OFFEROR to complete [the table] in white cells. . ." AR 757, 761. On the RFP Microsoft Excel file presented to each offeror, the white cells each had "$0.00" pre-entered. *Id.* The cells that corresponded to labor categories without estimated labor hours in Table 19-0 were highlighted red and blank. *Id.*

With regard to the price evaluation, the RFP noted that DOJ would "evaluate each Offeror's unit pricing  . . . for reasonableness and realism" and that "[t]he total evaluated price will be evaluated for reasonableness." AR 726. The RFP explained that  "the Government *may* reject any offer if it determines that the Offeror's proposed prices lack balanced pricing and pose an unacceptable risk to the Government." *Id.* (emphasis added). The RFP goes on to state that "[u]nbalanced pricing exists when, despite an

---

[8] Both Leidos and DOJ agree that Microsoft Excel interprets blank cells as zero by default when making its calculations. Leidos' Mot. for J. on the Admin. R. at 17; Def.'s Cross-Motion for J. on the Admin. R. to Leidos at 5.

acceptable total evaluated price, the price of one or more contract line items is significantly over or understated as indicated by the application of price analysis techniques." AR 726-27. In reviewing pricing submissions, the RFP explained that "unrealistically low prices will be eliminated from further consideration" and "[p]rices that are extreme or excessive will be judged unreasonable or unbalanced, and the proposal will be eliminated from further consideration[.]" AR 727. Unrealistically low prices are those which "impair the Contractor's ability to recruit and retain competent professional employees." AR 727. The RFP states that "[t]he Department *may* reject an offer as being unacceptable if it is materially unbalanced as to the prices for the base period and the option period" and that "[b]ell curve escalation pricing or negative escalation techniques are not permitted over the time evaluated." AR 727 (emphasis added).

Under the terms of the Source Evaluation and Selection Plan, an evaluation team would examine proposals. AR 41. The evaluation team would consist "of the Technical Evaluation Panels (TEPs) . . . and a Price Evaluation Panel (PEP)." *Id.* The CO, who chaired the PEP, would "evaluate the Pricing proposal of each offeror to determine whether the offered unit prices and HCFs are fair, reasonable, realistic, and balanced" and "evaluate the Total Evaluated Price . . . for each proposal[.]" AR 48. Later, the entirety of the PEP would evaluate the submissions and come to a consensus report. The Source Evaluation and Selection Plan provided that the price evaluation, aside for mandatory requirements, would "be a subjective evaluation." AR 44.

### B.      ManTech's Proposal

ManTech submitted its proposal on June 5, 2017. AR 821. In its narrative pricing

proposal, which is at issue in this protest, ManTech stated that "[t]he data submitted

herein is in compliance with ManTech's policies and represents a comprehensive

evaluation of the resources necessary to perform the RFP requirements."  AR 860.

Regarding Pricing Methodology generally, ManTech further stated "ManTech takes no

exceptions or deviations to/from the RFP. AR 857.

ManTech, however, then included the following statement in in its pricing

methodology narrative:

> 1.3.5   Program Management Office. ManTech has proposed an additional
> labor category for Program Management Office (PMO) support.  In
> accordance with our disclosure statement, these costs are considered
> directly chargeable to the contract. [. . .].

AR 863.

Section 1.3.5 was included in ManTech's table of contents for its price

submission. AR 859. However, the Excel pricing tables ManTech submitted did not

include an additional CLIN for Program Management Office support or a CLIN for a

financial analyst/controller as discussed in the narrative statement.  AR 920-27.

### C.      Leidos' Proposal

Leidos submitted its proposal on June 5, 2017. AR 2069. In Leidos' price

proposal, some of the cells in Table 19-1.2 were not filled in and thus were blank. AR

2089-90. Specifically, all of the cells associated with the labor rate for the administrative

specialist position for work to be performed at the contractor's site were left blank. *Id.*[9]
On Table 19.-3.2 "$0" appeared for the administrative specialist position for work to be
performed at the contractor's site. AR 2080-81. This was the same $0.00 value that
appeared for all offers because "0" hours were identified for the position on Table 19-0.
Leidos' submitted Table 19-1.2 and 19-3.2 are included in the appendix of this opinion.[10]

### D.    Challenged Price Proposals Submitted by Other Offerors and the Proposals Eliminated from Competition by DOJ

ManTech and Leidos identify other price proposals which they contend had
pricing issues but were nonetheless allowed to compete in Phase 2. *See* AR 2636-40. In
particular, the "ITSS-4 Price Proposal Evaluation" noted for [. . .], that some of its
proposed "rates are unrealistically low at the [b]asic level" and "at the Senior level with
most categories. . . ." AR 2637. For [. . .], the same evaluation stated "[l]abor category
rates are very low across most labor categories . . . ." *Id.* For [. . .], the evaluation stated
that there was "an unrealistic extremely low rate for the Help Desk labor category . . . ."
*Id.* For [. . .], the evaluation stated "[l]abor category rates are exceptionally low across
most labor categories. . . ." *Id.* For [. . .], the chairperson identified four labor category
rates that were "unreasonably high . . . ." AR 2638. For [. . .], the evaluation stated rates
"become low as the expertise level increases . . . ." AR 2639. For [. . .], the evaluation
stated "[t]he Government Site rates are identical to the Contractor Site rates which is

---

[9] A review of the Administrative Record confirms that all other offerors that moved onto Phase 2 proposed prices for each of the 49 labor categories. AR 921, 1018, 1131, 1125, 1336, 1457, 1553, 1646, 1756, 1861, 1960, 2089, 2202, 2303, 2383, 2474, and 2586.

[10] As discussed in the first footnote if this opinion, these spreadsheets have been redacted from the opinion because they contain confidential business information.

unrealistic[.]" *Id* (emphasis removed). For [. . .], the evaluation stated "labor category

rates are exceptionally low across most labor categories . . . ." *Id.* In addition, the

proposal submitted by [. . .] was identified as problematic because [. . .] "applied an

escalation rate of 1.0% across all labor categories for the Base Period years and no

escalation for all years of the Option Period." *Id.* (emphasis removed).

In February 2018, the PEP conducted its evaluation and produced the "Phase 1

Consensus Price Evaluation Report." AR 2870. The PEP evaluated unit prices "for

reasonableness, realism, and balance" and the "proposed prices were compared to the

Independent Government Cost Estimate (IGCE)." *Id.* The PEP report indicated that the

"majority of offerors fall within a range of approximately $[. . .] to the IGCE of $[. . .]."

AR 2874. In its evaluation of labor category pricing and escalation rates, the PEP

concluded "[o]f the 42 proposals, twenty-five (25) had one or more occurrences of

nominal understated or unbalanced pricing." *Id*. These included low labor rates,

decreasing labor rates, missing labor rates, and unbalanced escalation rates. *Id.* The PEP

concluded that of those with pricing issues, only "two (2) were considered to have a total

estimated price that was extreme or unrealistically low or unbalanced so as to be

eliminated from consideration." *Id.* Specifically, the PEP found that [. . .]'s proposal

included "rates that are extremely low across all categories and levels" and [. . .]'s

proposal had an escalation rate that "is not only significantly unbalanced, but it caused an

excessively high [Total Evaluated Price] . . . ." *Id.* The PEP further found two offerors

had "pricing anomalies that were determined to present significant risk to the

Government." AR 2874. These were [. . .] which "did not use the latest version of the RFP Attachment 1" and [. . .] which "proposed labor rates that are identical across most labor categories." AR 2874-75. Finally, the PEP identified [. . .]'s "escalation rate of 0.0%" throughout as one that "is unrealistic and presents significant risk to the Government." AR 2875.

The PEP also noted four other proposals with pricing issues but concluded that these offerors could go forward. AR 2875. One of the four identified was Leidos for failing "to enter labor rates for the Administrative Specialist, Contractor site labor category." *Id.* The PEP also identified [. . .] as one of the four because it "[a]pplied an escalation rate of 1.0% in the Base Period years and an escalation rate of 0% in the Option Period years." *Id.* The PEP concluded that [. . .]'s pricing issue "presents limited risk to the Government." *Id.* Finally, with regard to ManTech, the PEP determined that "ManTech proposed an additional labor category for Program Management Office support with costs considered as directly chargeable to the contract[.]" AR 2876. The PEP stated that "[t]he solicitation clearly identifies that the Contractors unit prices must be inclusive of any contract management and administrative functions[,]" and determined that ManTech's proposal was "not acceptable and the Government will not open the solicitation for negotiations." *Id.* Therefore, the PEP "eliminated [ManTech] from consideration for Phase 2." *Id.*

The Technical Evaluation Review Panel ("TERP") also issued a report in February 2018 entitled "Phase 1 Consensus Recommendation Report." AR 2882-92. The TERP

concluded that "there was no justification, based on price, for replacing or adding to any of the [. . .] highest ranked vendors" based on the TEP's technical rankings. AR 2890. The TERP report further stated that "putting aside those vendors that had pricing anomalies or errors, the TEP considers the pricing of all vendors, though disparate numerically, to be within a reasonable band and, for evaluation purposes, substantially equal." AR 2891.

On July 18, 2018, the CO "reviewed and considered the consensus findings as set forth in the Technical Evaluation Report as well as the award recommendation of the panel set forth in the [TERP's] Recommendation Report," and "considered the findings in the Pricing Report, which set forth the price analysis of all unrestricted offerors." AR 2914; *see* 2915 ("The specific rationale supporting the ratings and used as the basis for my decision can be found in the Recommendation report . . .and the Pricing Report . . ."). Ultimately, in line with TERP's report, the CO determined that all of the proposals selected for Phase 2 "meet all of the solicitation requirements in accordance with the RFP" and are "fair and reasonable, realistic, and balanced in accordance with the RFP evaluation criteria." AR 2914.

### E.    ManTech's Protest

On May 16, 2018, ManTech filed an agency level protest with DOJ. AR 4016-30. In its protest, ManTech argued that it should have been clear to DOJ that the statement in its pricing proposal regarding additional contract charges for a Program Manager assistant was "obviously a mistake" because (1) "ManTech's pricing tables set forth labor rates for the 49 labor categories provided by DOJ only" and (2) "ManTech did not add a

[CLIN] for [project management operations] support for a Financial Analyst/Controller labor category to any of its pricing tables." AR 4025. ManTech requested that DOJ "include ManTech in the competitive range or, alternatively, allow ManTech to clarify its proposal and correct this clerical error without opening discussions."  AR 4019.

Upon receiving the agency level protest, DOJ requested factual and legal support from ManTech.  AR 4031-32.  ManTech responded on June 19, 2018.  AR 4033-45. Relying upon a declaration from its Senior Vice President of Pricing and Business Strategies, [. . .] (which was not before the agency at the time of its decision to eliminate ManTech), ManTech explained that the non-compliant additional labor category was added by mistake and was from [. . .].  AR 4036-37; *see also* AR 4044-45 ([. . .] Decl.). ManTech also argued that its pricing was not impacted by this proposed additional labor category for program management support because the CLINs in ManTech's pricing spreadsheet—rather than the language in its pricing assumptions narrative—were controlling.  AR 4039-40.

On July 26, 2018, DOJ denied ManTech's agency level protest.  AR 4046-56. DOJ determined: (1) the CO reasonably believed that ManTech's inclusion of the additional labor category was intentional and not a clerical error; (2) even if the additional labor category was an error, it was neither clerical nor minor because to correct it would materially alter ManTech's pricing proposal; and (3) because the error was not minor or clerical, it could only be corrected through discussions—not clarifications—and

DOJ does not intend to engage in discussions or thereby permit revisions. *Id*. ManTech's protest to this Court followed.

### F.    Leidos' Protest

Leidos was initially moved onto Phase 2, AR 2905, and was only eliminated after ManTech filed its bid protest with a claim of unfair and unequal treatment referencing DOJ's decision to allow Leidos to move forward despite failing to provide a price for all units. When the CO reexamined Leidos' unit pricing issue, the CO determined that Leidos should be eliminated from the procurement. AR 4236. In its September 28, 2018, letter eliminating Leidos from the competition, the CO stated that Leidos "is not eligible for award because it failed to meet a mandatory requirement of the solicitation. Specifically . . . Leidos failed to propose a labor rate for CLIN category X044, Administrative Specialist, Contractor site." *Id*.; *see also*, AR 4239-40. Leidos' Table 19-1.2 with blank cells for the Administrative Specialist labor category is reproduced in the appendix to this opinion.

On October 15, 2018, the Government Accountability Office ("GAO") received Leidos' protest challenging DOJ's decision to eliminate Leidos from competition. AR 4417. On October 22, 2018, DOJ filed a request for dismissal of the GAO protest, citing 4 C.F.R. § 21.11(b) and the present litigation involving ManTech. AR 4427-28. On October 25, 2018, Leidos voluntarily withdrew its GAO protest. AR 4429. Leidos then filed its protest in this court.

## II.   LITIGATION HISTORY

19

ManTech filed its initial complaint on August 10, 2018. ManTech's Compl. (ECF No. 1). ManTech's initial complaint contained only one count challenging DOJ's decision to exclude ManTech from the competition based on a "clerical mistake that DOJ should have recognized and disregarded" or used the "clarification process without opening discussions." *Id.* at ¶ 34-35. ManTech filed a motion for judgment for the administrative record on September 13, 2018 and an amended complaint on September 26, 2018 adding a new count alleging unequal treatment of ManTech. ManTech Amend. Compl. ¶ 57 (ECF No. 16) (citing *Hunt Bldg. Co., Ltd. v. United States*, 61 Fed. Cl. 243, 274 (2003)); *see* ManTech's Mot. for J. on the Admin. R. ("MJAR") (ECF No. 13). In the new count ManTech asserted that "Leidos plainly failed to comply with the RFP's requirements" and even though "Leidos should have been automatically disqualified for that omission . . . DOJ excused this instance of noncompliance and indicated that it may 'request a revision' to fix the problem." ManTech Amend. Compl. ¶ 56 (citing AR 2875).

On October 11, 2018, the government filed its response and cross-motion for judgment on the administrative record. Def.'s Resp. and Cross-MJAR ("Def.'s MJAR ManTech") (ECF No. 21). In its motion, the government argued that ManTech's unequal treatment argument was moot because DOJ had decided to also eliminate Leidos from competition. *Id.* at 1. The government further argued that DOJ did not act arbitrarily or capriciously because DOJ was not required to seek a clarification and could not seek clarification for the purpose of correcting a material pricing error. *Id.* at 1-2. ManTech filed its reply on October 22, 2018 and DOJ filed its reply on November 2, 2018.

ManTech Reply (ECF No. 22); Def.'s Reply to ManTech (ECF No. 23).  On November 1, 2018, Leidos filed its bid protest challenging its elimination from the competition as arbitrary and capricious, *Leidos Innovations Corp. v. United States*, Case No. 18-1690 (ECF No. 1), on the grounds that DOJ should have sought a clarification before disqualifying Leidos if it did not understand the blank on its price proposals to mean $0.

The court consolidated the cases for argument with the agreement of the parties following a status conference on November 5, 2018 (ECF No. 24).  Thereafter, Leidos filed its motion for judgment on the administrative record on November 16, 2018. Leidos MJAR (ECF No. 31). On November 19, 2018 Leidos filed an amended complaint adding an "unequal treatment" count to its complaint. Leidos Amend. Compl. ¶ 47 (ECF No. 32). The government filed its response and cross-motion on November 30, 2018. Def.'s MJAR Leidos (ECF No. 34). On December 7, 2018, ManTech filed a motion to file an additional briefing in response to certain issues raised in Leidos' and the government's filings (ECF No. 37). All briefing in both of these consolidated cases was completed on December 14, 2018, and the court heard oral argument from both parties on December 17, 2018.

## III.  LEGAL STANDARDS

### A.  Motion for Judgment on the Administrative Record

This court exercises its jurisdiction over pre-award bid protests under 28 U.S.C. § 1491(b)(1) which grants "the United States Court of Federal Claims . . . jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award . . . ."

In accordance with 28 U.S.C. § 1491(b)(4), the "courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." Under 5 U.S.C. § 706, the court may only set aside agency procurement decisions that are "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed. Cir. 2015) (quoting *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1285 (Fed. Cir. 2010)). An agency's decision is arbitrary and capricious or an abuse of discretion when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 563 U.S. 29, 43 (1983)).  Indeed, "[i]f the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). The "disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence." *Constellation W., Inc. v. United States*, 125 Fed. Cl. 505, 533 (2015).

Under this "highly deferential" standard, *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000), "the court's task is to determine whether

'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Palladian Partners, Inc.*, 783 F.3d at 1252 (quoting *Savantage*, 595 F.3d at 1285-86). "When such decisions have a rational basis and are supported by the record, they will be upheld." *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002); *see NCL Logistics Co. v. United States*, 109 Fed. Cl. 596, 610 (2013). In short, the "'disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.'" *Colonial Press. Intern., Inc. v. United States*, 788 F.3d 1350, 1355 (Fed. Cir. 2015) (quoting *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009)). Thus, in procurement decisions, a protestor can prevail only "when it is clear that the agency's determinations are irrational and unreasonable." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1351 (Fed. Cir. 2013) (citing *R & W Flammann Gmbh v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003)).

### B.      Material Errors Versus Minor Irregularities

In deciding whether DOJ acted rationally in rejecting proposals submitted by ManTech and Leidos, this court must consider whether DOJ properly applied FAR 12.301(b)(1). FAR 12.301(b)(1) requires that "contracts for the acquisition of commercial items include the clause set forth at FAR 52.212-1(g) which states that the agency 'may . . . waive informalities and minor irregularities in offers received.'" *Strategic Bus. Solutions, Inc. v. United States*, 129 Fed. Cl. 621, 629 (2016) (emphasis removed). Because DOJ only had the discretion to waive "informalities and minor irregularities," DOJ cannot waive errors that were rationally categorized as material. In this connection,

proposals that "fail[] to conform to the material terms and conditions of the solicitation . .

. should be considered unacceptable." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448

(Fed. Cir. 1996) (internal citations and quotations omitted). Material requirements are

those necessary in order for a proposal to "provide the exact thing called for in the

request for proposals[.]" *Bus. Integra, Inc. v. United States*, 116 Fed. Cl. 328, 333 (2014)

(quoting *Centech Grp*, 554 F.3d at 1037). Thus errors are considered to be material when

they (1) violate an express provision in the RFP and (2) the provision served a

substantive purpose. *Id.* at 333-36. A substantive purpose is something important to the

government's evaluation of the offer, is binding on the offeror, or has a more than

negligible impact on the price, quantity, or quality of the bid. *Id.* (stating that a material

provision is one that is important to the government's evaluation of the offer); *St. Net,

Inc. v. United States*, 112 Fed. Cl. 99, 106-110 (2013) (finding a provision to serve a

substantive purpose because it was binding on the offeror); *Blackwater Lodge & Training

Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 505 (2009) (holding that a substantive

provision of the RFP is one that has "more than a negligible impact on the price, quantity,

quality, or delivery of the subject of the bid"); *Furniture by Thurston v. United States*,

103 Fed. Cl. 505, 518 (2012) ("A solicitation term is 'material' if failure to comply with

it would have a non-negligible effect on the price, quantity, quality, or delivery of the

supply or service being procured") (citations omitted). So long as the requirement serves

a substantive purpose, it is material. *See Strategic Bus. Sol'n, Inc. v. United States*, 129

Fed. Cl. 621, 629-30 (2016) (holding that the requirement to redact parts of a proposal

24

was material because it "served a substantive purpose"), *aff'd*, 711 Fed. Appx. 651 (2018).

### C.     Clarifications Under FAR 15.306(a) and Obvious, Clerical Mistakes

In contrast to material errors which cannot be waived or fixed without discussions, FAR 15.306(a) provides that obvious, clerical mistakes may be fixed through clarifications. *See Dell Fed'l Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018) (explaining that the Agency "rationally chose discussions, rather than clarifications . . . to address [] material errors"); *Al Mutawa & Sahni Co. W.L.L.*, Aug. B-411534, 2015 CPD ¶ 271, 2015 WL 5577133 at *4 (Comp. Gen. Aug. 14, 2015) (holding that the protestor's "failure to provide this information constituted a material omission, which could only be corrected through discussions"). This RFP provided that "[t]he Department may give an offeror the opportunity to clarify certain aspects of its proposal consistent with the guidance contained in FAR 15.306(a)[.]" AR 46. Under FAR 15.306(a), clarifications "may be given . . . to resolve minor or clerical errors." FAR 15.306(a)(2). Importantly, however, "'[c]larifications are not to be used to *cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal*, or otherwise revise the proposal.'" *Dell Fed'l Sys., L.P.*, 906 F.3d at 998 (quoting *JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 661 (2002) (emphasis added)). Indeed, clarifications may not provide new information or alter already provided information. *See Level 3 Commc'ns, LLC v. United States*, 129 Fed. Cl. 487, 504-05 (2013) (determining that a "[s]ubmission of the [clearer map]" was a clarification because it "would not have varied the terms of Level 3's offer" and was only to "confirm Level 3's proposal");

*BCPeabody Constr. Servs. Inc. v. United States*, 112 Fed. Cl. 502, 511 (2013) (permitting clarifications that provided "essential information about a subcontractor and contractor, respectively but did not alter or revise the terms of the pertinent offers").

Errors may be fixed with clarifications under FAR 15.306(a) where the error is an obvious, clerical mistake. Obvious, clerical errors regarding prices exist when "the existence of the mistake and the amount intended by the offeror is clear from the face of the proposal." *DynCorp Int'l LLC v. United States*, 76 Fed. Cl. 528, 545 (2007) (quoting *IPlus, Inc.*, B–298020, B–298020.2, 2006 CPD ¶ 90, 2006 WL 1702640 (Comp. Gen. June 5, 2006)); *see Criterion Sys., Inc. v. United States*, 2018 WL 4474672 at *7 (Fed. Cl. Sep. 13, 2018) ("[T]he obviousness of the error is an important aspect of determining whether the CO acted reasonably by not seeking clarification"); *Slater Elec. Co.*, Dec. B–183654, 75–2 CPD ¶ 126, 1975 WL 8122 (Comp. Gen. May 26, 1973) ("Basically, even though a bidder fails to submit a price for an item in a bid, that omission can be corrected if the bid, as submitted, indicates not only the probability of error but also the exact nature of the error and the amount intended. The rationale for this exception is that where the consistency of the pricing pattern in the bidding documents establishes both the existence of the error and the bid actually intended, to hold that the bid is nonresponsive would be to convert what appears to be an obvious clerical error of omission to a matter of nonresponsiveness.").

### D.    Unfair or Unequal Treatment

The standards for determining whether an agency was unfair or applied unequal treatment in its evaluation of proposals are well-settled. "This court has held that unequal

treatment claims are the 'quintessential example of conduct which lacks a rational basis.'" *Chenega Mngmt. LLC v. United States*, 96 Fed. Cl. 556, 585 (2010) (quoting *Hunt Bldg. Co., Ltd.*, 62 Fed. Cl. at 273) (emphasis removed). The "fundamental principle of government procurement is that CO's treat all offerors equally and consistently apply the evaluation factors listed in the solicitation." *TLT Const. Corp. v. United States*, 50 Fed. Cl. 212, 216 (2001) (citing 10 U.S.C. § 2305 (1999)); *see Cont'l Bus. Enter., Inc. v. United States*, 196 Ct. Cl. 627, 634 (1971) ("[I]t is an implied condition of every request for offers that each of them will be fairly and honestly considered."). Indeed, failing to waive or relax solicitation requirements equally among proposals constitutes arbitrary and capricious behavior. *See Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1368 (Fed. Cir. 1999) (holding that a protest based on the failure to relax solicitation requirements equally among offerors should have been sustained); *see also Archura, LLC v. United States*, 112 Fed. Cl. 487, 498 (2013) (concluding that rejecting a protestor's proposal for an "unclear response" while giving awards to other offerors' with proposals containing similarly unclear responses as arbitrary and capricious).

## IV.   DISCUSSION

### A.   ManTech's Elimination from the Competition Was Not Arbitrary, Capricious, or an Abuse of Discretion

#### 1.   ManTech's Inclusion of an Additional Labor Category Was a Material Error in ManTech's Proposal That Could Not Be Fixed Through a Clarification

ManTech claims that DOJ acted arbitrarily, capriciously, and abused its discretion in determining that Section 1.3.5 of ManTech's proposal, which included an additional administrative labor category directly chargeable to the contract, was a material error that could not be corrected through a clarification. An error is material where the error (1) violates an express provision of the RFP and (2) the RFP provision violated serves a substantive purpose in the evaluation process. *Bus. Integra, Inc*., 116 Fed. Cl. at 333. An RFP provision is considered to have a substantive purpose when it is important to the government's evaluation, is binding on the offeror, or has more than a negligible impact on the price, quantity, or quality of the bid. *Id.* at 335; *St. Net, Inc.*, 112 Fed. Cl. at 109-110; *Blackwater Lodge & Training Ctr., Inc.*, 86 Fed. Cl. at 505.

DOJ eliminated ManTech from the competition because ManTech in Section 1.3.5 of its proposal "proposed Program Management Office support with costs considered as directly chargeable to the contract" even though the RFP "identifies that the Contractors unit prices must be inclusive of any contract management and administrative functions." AR 2893. ManTech does not dispute that Section 1.3.5 stated:

> Program Management Office. ManTech has proposed an additional labor category for Program Management Office (PMO) support.  In accordance with our disclosure statement, these costs are considered directly chargeable to the contract.

AR 863. Nor does ManTech dispute that the RFP stated that "[t]he Contractor is expected to provide competent overall contract management; this management is not separately billable to the Government . . . ." AR 667. Indeed, ManTech concedes that the "RFP directed offerors to include the cost of management and administration functions in their

fully-loaded rates." ManTech MJAR at 2. Rather, ManTech argues that DOJ should have understood that the inclusion of Section 1.3.5 was an obvious mistake in the offer and either disregarded that portion of ManTech's proposal or asked ManTech for a clarification. The government argues that it was not irrational for DOJ to deem the inclusion of Section 1.3.5 a legitimate part of ManTech's proposal that violated a substantive provision of the RFP essential to DOJ's price evaluation. The government argues for this same reason that DOJ did not abuse its discretion by failing to seek a clarification from ManTech. As the government explains, because the inclusion of Section 1.3.5 in ManTech's proposal was a material error it could only be corrected through discussions and the RFP stated that discussions would only be considered in Phase 2 of the competition.

Because ManTech concedes that Section 1.3.5 violated the express terms of the RFP, the only question before the court is whether DOJ acted irrationally by failing to ignore Section 1.3.5 as an obvious error or by failing to seek a clarification from ManTech before eliminating it from the competition. The answer to both these arguments turns on whether DOJ rationally concluded that ManTech's proposal in Section 1.3.5 to charge DOJ for additional management and administrative costs impacted a substantive provision of the RFP and was thus a "material" error. Here, there can be no question that proposing an additional labor category would affect DOJ's price evaluation. Section 1.3.5 in ManTech's proposal is reasonably read to mean that DOJ would be liable for management and labor costs not included on ManTech's price tables. The fact that

ManTech did not include costs attributable to the additional labor category to its pricing tables does not mean the error was an obvious mistake and not material. Section 1.3.5 expressly stated that if awarded the contract it would charge DOJ for additional management and administrative work.[11] DOJ would have had no reason to question ManTech's intent. ManTech's reliance on *Griffy's Landscape Maint. LLC v. United States*, 46 Fed. Cl. 257 (2000) where the court found an agency's reliance on the bidder's past performance to decide to engage in a clarification reasonable to, here, suggest that DOJ should have considered ManTech's incumbency in construing Section 1.3.5 is misplaced. ManTech argues that because it was not currently charging DOJ for the additional costs identified in Section 1.3.5 that DOJ should have known that Section 1.3.5 was an obvious error. *See* ManTech MJAR at 18. The court agrees with the government that because ManTech was an incumbent DOJ may have just as reasonably concluded that the additional labor category and associated costs proposed in Section 1.3.5 are necessary for program performance. Def.'s MJAR ManTech at 19 (referencing AR 683). In short, DOJ rationally concluded that ManTech was proposing to add costs to any contract it received that were outside the requirements of the RFP and thus ManTech had made a material error in its proposal.

---

[11] The court further finds that ManTech's claim that Section 1.3.5 should not have been read to be proposing an additional labor category because Section 1.3.5 states ManTech "has proposed" instead of "proposes" places too much emphasis on the verb tense in the proposal. *See* Oral Argument 10:52:50-10:55:42. Moreover, other sentences of Section 1.3.5 use present tense. AR 863 ("ManTech deems this function necessary for program performance.").

Having concluded that including Section 1.3.5 in ManTech's proposal was a material mistake, the court agrees with the government that DOJ did not abuse its discretion by failing to seek a clarification from ManTech regarding ManTech's inclusion of Section 1.3.5 before eliminating ManTech from the competition. Material changes to proposals can only be accomplished through discussions and not through clarifications. *See Dell Fed'l Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018) (explaining that the Agency "rationally chose discussions, rather than clarifications . . . to address [] material errors"); *Al Mutawa & Sahni Co. W.L.L.*, Aug. B-411534, 2015 CPD ¶ 271, 2015 WL 5577133 (Comp. Gen. Aug. 14, 2015) (the protestor's "failure to provide this information constituted a material omission, which could only be corrected through discussions"). "'Clarifications are not to be used to cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal, or otherwise revise the proposal'" *Dell Fed'l Syst., L.P.*, 906 F.3d at 998 (quoting *JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 661 (2002)). ManTech would have needed to change its proposal in order for its proposal to conform to the RFP. In this connection, ManTech's reliance on *Allied Techs. Group, Inc. v. United States*, 94 Fed. Cl. 16 (2010) to argue that DOJ should have sought a clarification regarding Section 1.3.5 is therefore misplaced. *See* ManTech Reply at 10. In *Allied Tech.*, the court upheld DOJ's decision to clarify that an offeror's proposal to the effect that "[p]ricing does not include . . . Expunge/Delete Services . . . which will need to be separately scoped and priced" meant that those costs were not included in the offeror's proposal. *Id.* at 43. In *Allied Tech*, the offeror was not required to make any change to its proposal. *Id.* Here, ManTech would have needed to

delete Section 1.3.5 from its pricing proposal to conform to the RFP. Put another way, ManTech would have needed to make a material change to its proposal to conform its proposal to the RFP. This would have required DOJ to engage in discussions which DOJ elected not to pursue in Phase 1. In such circumstance, DOJ did not abuse its discretion by not seeking a clarification from ManTech.

### 2.     DOJ Did Not Treat ManTech Unfairly or Unequally

ManTech argues in the alternative that even if Section 1.3.5 amounted to a material pricing error in ManTech's proposal that DOJ was arbitrary, capricious, and abused its discretion because other offerors with material pricing errors were allowed to continue to Phase 2 of the competition whereas ManTech was eliminated.[12] To demonstrate unequal treatment, a protestor must show that the federal agency treated similar defects in proposals differently. *Active Network LLC v. United* States, 130 Fed. Cl. 421, 429 (2017); *TLT Const. Corp. v. United States*, 50 Fed. Cl. 212, 216 (2001). Here, ManTech cannot meet this burden. First, ManTech's contention that other offerors will be allowed to fix their prices in discussions with DOJ is not supported. The

---

[12] The government contends that ManTech has waived its unequal treatment argument because ManTech only referenced Leidos in its unequal treatment claim and now that Leidos also has been eliminated from the competition that ManTech should not be able to compare its treatment to other offerors. Def.'s Reply ManTech at 3. The government further argues that to the extent that ManTech's unequal treatment claim hinges on whether other offers were properly evaluated, ManTech never made a claim regarding improper price evaluations and thus the claim must be rejected, as waived. *Id.* at 6. The court agrees with ManTech that ManTech raised an unequal treatment claim in its complaint and may argue that it was not treated fairly as compared to other offerors not just Leidos. However, the government is correct that ManTech failed to challenge the price evaluations of other offerors and thus issues regarding whether DOJ correctly evaluated prices is not before the court.

government has made clear that DOJ will not engage in discussions with any of the offerors regarding their prices. Oral Argument 12:14:37-12:16:30; AR 4050; Def.'s MJAR ManTech at 2-3. Thus, to the extent that ManTech claims others will be able to fix their proposals through discussions whereas ManTech will not, ManTech's claim of unfairness fails.

Second, ManTech has failed to show that DOJ permitted offerors with material pricing errors in their proposals to move onto Phase 2 of the competition. The record shows that after reviewing the final evaluation reports DOJ concluded that all of the proposals selected for consideration in Phase 2 of the competition, "meet all of the solicitation requirements in accordance with the RFP" and are "fair and reasonable, realistic, and balanced in accordance with the RFP evaluation criteria." AR 2914. While DOJ acknowledged that there were "pricing anomalies" with some proposals, the DOJ Phase 1 Consensus Report stated that the prices for all offerors moving onto Phase 2 were "within a reasonable band and, for evaluation purposes, substantially equal." AR 2891. Therefore, contrary to ManTech's assertions, DOJ did not allow any offeror with a material pricing defect to move onto Phase 2 of the competition. The RFP reserved to DOJ the discretion to decide whether pricing issues warranted elimination of an offeror's proposal. AR 726 ("The Offeror is advised that the Government *may* reject any offer if it determines that the Offeror's proposed prices lack balanced pricing and pose an unacceptable risk to the Government.") (emphasis added). Indeed, the Price Evaluation and Selection Plan indicated that price evaluations would be a "subjective process." AR

44. The RFP stated that only those proposals with prices that DOJ concluded would "impair the Contractor's ability to recruit and retain competent professional employees . . . will be eliminated from further competition." AR 727. The PEP evaluated all unit prices "for reasonableness, realism, and balance" and the "proposed prices were compared to the Independent Government Cost Estimate (IGCE)." AR 2871. In its evaluation of labor category pricing and escalation rates, the PEP concluded "of the 42 proposals, twenty-five (25) had one or more occurrences of nominal understated or unbalanced pricing." AR 2874. The PEP concluded that of those with pricing issues, only "two (2) were considered to have a total estimate price that was extreme or unrealistically low or unbalanced so as to be eliminated from consideration" and two "with pricing anomalies that were determined to present significant risk to the government." AR 2874-75. The PEP report indicated that "majority of offerors fall within a range of approximately \$[. . .] to the IGCE of \$[. . .]." AR 2874. The court finds that DOJ provided reasons for why certain pricing anomalies did not amount to material pricing deficiencies and allowed those offerors to move onto Phase 2 of the competition and why other offerors, including ManTech, had pricing issues that amounted to material deficiencies and were thus eliminated from the competition. Thus, the court finds that DOJ did not treat ManTech unfairly when deciding to eliminate ManTech from competition.

### B. Ledios' Elimination from Competition Was Not Arbitrary, Capricious, Nor an Abuse of Discretion

#### 1. The Blanks in Ledios' Submissions for the Administrative Specialist Position Could Not Be Fixed Through Clarifications

Leidos argues that DOJ acted arbitrarily, capriciously, and abused its discretion when it eliminated Leidos from the competition on the grounds that Leidos did not propose a specific dollar amount for the administrative specialist position in Table 19-1.2 of its proposal. The government argues that Leidos' failure to include a dollar amount for the position amounted to a material error in Leidos' proposal because failing to provide a dollar figure violated the express requirements in the RFP and prevented DOJ from meaningfully evaluating Leidos' proposal. As discussed above, an error is material when it (1) violates an express provision of the RFP and (2) that provision serves a substantive purpose. A substantive purpose is one important to the government's evaluation of the offer, is binding on the offeror, or impacts the price, quantity, or quality of the proposal. *Bus. Integra, Inc.*, 112 Fed. Cl. at 335; *St. Net, Inc.*, 112 Fed. Cl. at 109-110; *Blackwater Lodge & Training Ctr., Inc.*, 86 Fed. Cl. at 505.

DOJ "determined that [Leidos was] not eligible for award because it failed to meet a mandatory requirement of the solicitation" requiring offerors to propose unit prices for all mandatory CLIN categories. AR 4239. The record reflects that Leidos' proposal contained two blank entries in Table 19-1.2 for the administrative specialist position. AR 2089-90. The RFP states in four separate locations the requirement to provide all the labor rates. AR 717 (the tables attached to the RFP "shall be fully completed by the offeror and must price all forty-nine (49) DOJ labor categories . . ."); AR 718 ("Table 19-1 pricing tables must include fully burdened and fixed hourly unit prices, to include profit, for all forty-nine (49) mandatory labor categories as set forth in this solicitation"); AR 718  ("Table 19-1 pricing tables must include fully burdened and fixed hourly unit

prices . . . for all forty-nine (49) mandatory labor categories"); AR 726 ("[o]ffers failing

to proposal on all mandatory forty-nine (49) CLIN categories . . . will receive no further

consideration and will be eliminated from this evaluation"). The RFP further clarified

that offerors "must input the resulting dollars and cents as values in Table 19-1. . . ." AR

719; *see* AR 719 ("[a]ll prices and handling charge factors shall . . . [b]e limited to two

(2) decimal places for Pricing Tables 19-1 and 19-3 (i.e. dollars and cents)."). The court

agrees with the government, the RFP could not be any clearer: to comply with the RFP, a

proposal had to include a price for each mandatory CLIN category in the form of dollars

and cents, including the administrative specialist position.

      Leidos does not dispute that the RFP required a price for the administrative

position, but argues that DOJ should have understood that the blank cells in its proposal

were in fact a proposed price of $0.00 on the grounds that blank cells on Excel

spreadsheet are to be read as 0s.[13]  The court agrees with the government that Excel's

automatic function calculations do not supersede the clear directives in the RFP to

provide values in dollars and cents. Regardless of whether blank cells are read as 0s on

Excel spreadsheets, the fact remains that the RFP expressly instructed offerors to fill in

the table with values in "dollars and cents." AR 719. In such circumstance, Leidos'

reliance on the Excel spreadsheet is misplaced. Without a price in dollars in cents as

---

[13] The court agrees with the government that Leidos' additional post-hoc rationalizations for not
including a dollar value for the position were not before the agency and will not be considered.
Oral Argument 10:48:25-10:50:00; Def.'s MJAR Leidos 20. *See PGBA, LLC v. United States*, 60
Fed. Cl. 196, 204 (2004) ("this Court is mindful that it must critically examine any *post hoc*
rationalization.").

required by the RFP, DOJ reasonably read Leidos' proposal as failing to include a price for one of the mandatory CLINs. *See Constellation W., Inc. v. United States*, 125 Fed. Cl. 505, 548 (2015) (noting that because the offeror submitted blank cells, the agency's "decision not to infer any particular price for the [] cells the [the offeror] left empty was not arbitrary").[14] For these reasons, the court concludes that it was not arbitrary or capricious nor an abuse of discretion for DOJ to conclude the blank did not mean "$0.00."[15] Rather, DOJ rationally concluded that Leidos had failed to comply with the express requirements of the RFP.

Having concluded that Leidos' proposal was defective because Leidos failed to include a labor rate for the administrative specialist position in express violation of the RFP, the court must now decide whether failing to include a dollar and cents price for the administrative specialist position amounted to a violation of a substantive provision of the

---

[14] Leidos relies on *Linc Government Services, LLC v. United States*, 108 Fed. Cl. 473 (2012), for the proposition that it was arbitrary, capricious, and an abuse of discretion for the government not to treat the blanks to mean $0. Leidos' Reply at 14. Leidos' reliance on *Linc Government Services* is misplaced. First, in *Linc Government Services*, each contract line item contained either a number or a dash. 108 Fed. Cl. at 503. Thus, the offeror had in fact filled all the cells by including a dash. Second, *Linc Government Services* relied exclusively on FAR Part 14 "as a legal ground for determining that missing pricing breakdown information was immaterial" and FAR Part 14 is not applicable to this negotiated procurement. *See Bus. Integra, Inc.*, 116 Fed. Cl. at 335.

[15] The rationality of DOJ's conclusion that a blank did not mean "$0.00" is not refuted by the appearance of $0 in later tables, like Table 19-3.2. This is because the proposals of every offeror included a $0 for the administrative specialist position in later tables based on DOJ's decision to not include any hours in Table 19-1.0 for that position. As such, Leidos cannot rely on Table 19-3.2 to establish that DOJ had to have known Leidos meant to include a "$0.00" unit price for the administrative specialist position.

RFP and was thus a "material" error.  Leidos argues that failing to include price

information for the administrative specialist position was not material  because with 0

hours proposed for the position the price for the position was $0 for evaluation purposes

and thus the absence of a unit price did not "not materially alter [Leidos'] pricing

proposal." Leidos MJAR at 25. The government responds that "DOJ could not conduct a

meaningful review of Leidos' price proposal because it could not know what price Leidos

intended to offer for that mandatory category." Def.'s MJAR Leidos at 21.

This court has determined in several previous cases that proposals with missing

mandatory price information contain material errors, even when the price information has

a minimal impact the total price, so long as the needed prices will be considered in the

evaluation process and binding on the offeror. For example, in *Business Integra, Inc. v.

United States*, the plaintiff submitted a proposal but "failed to fill in [labor] rates" for one

contract position even though the solicitation "required that offerors provide rates for all

36 labor categories for the base and option years." 116 Fed. Cl. at 331. The plaintiff was

"eliminated from consideration for an award" because of this missing information. *Id.* at

332. In determining whether the plaintiff's omission of the price was material, the court

stated that "omission of even a single labor rate, no matter its significance, 'will result in

material non-conformity.'" *Id.* at 335 (citation omitted). Although the missing costs

amounted to 0.0041% of the total proposed price, it was still a material error. *Id.* at 334-

35. The court accepted "that the requirement to provide pricing for all labor categories for

all years was a material term in the solicitation" because it was needed for the evaluation

process and set a binding price on the offeror. *Id.*; *see also Constellation W. Inc.*, 125

Fed. Cl. at 549 (noting that missing rates were material because they would have raised

the total price by 0.008%); *Bd. of Regents of Nev. Sys. of Higher Educ. on Behalf of*

*Desert Research Inst. v. United States*, 132 Fed. Cl. 435, 454 (2017) ( in which the court

held in connection with a proposal eliminated for missing certain data and assumptions

that while the "missing data and assumptions may not have changed [the protestor's]

proposed price, they certainly could have had a 'non-negligible effect' on the probable

cost of [the protestor's] proposal." ).

    The above-cited cases make clear that the reasonableness of an agency's decision

to find that including a price was material turns on whether including prices is mandatory

in the RFP and will be considered by the agency as the offeror's binding price. Here, the

RFP provided that in addition to the total evaluated price, DOJ would "evaluate each

Offeror's unit pricing  . . . for reasonableness and realism." AR 726. Thus, without a

labor rate for the administrative specialist position in Table 19-1.2, it was not possible for

DOJ to evaluate Leidos' proposed unit pricing for the administrative specialist position.

Indeed, because Leidos left the cell blank, it was not clear from the proposal if Leidos

would be contractually bound to provide this labor. *See* Def.'s Reply Leidos 9 (citing

*GTA Containers, Inc.*, B-249327, 92-2 CPD ¶ 321, 1992 WL 328743 (Comp. Gen. Nov.

3, 1992) ("The firm's failure to include unit and extended prices for the two CLINs made

it impossible to determine from the face of the bid not only the intended prices for the

two line items, but also whether GTA was actually agreeing to provide these items.")). In

such circumstance, the court finds that DOJ's ultimate conclusion that Leidos' failure to

include a unit price for the administrative specialist position amounted to a material

omission in its proposal was rational and supported.[16]

Because DOJ rationally determined that Leidos' failure to provide a unit price for

the administrative specialist position was a material omission in Leidos' proposal, DOJ

did not abuse its discretion in failing to request a clarification from Leidos regarding its

intended price. As discussed above, material changes to a proposal cannot be fixed

through clarifications. *Dell Fed'l Syst., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir.

2018). It is true that where a missing price can be determined from the face of the

proposal that a clarification may be appropriate, however, Leidos' price for an

administrative specialist was not clear from the face of Leidos' proposal and thus Leidos

would have needed to materially change its proposal to comply with the RFP. *See*

---

[16] In light of the foregoing, Leidos' reliance on a statement DOJ made before the GAO in a separate bid protest arising from this procurement is misplaced. Leidos argues that by DOJ conceded that Leidos' blank CLINs were immaterial clerical errors when DOJ explained to the GAO in its request for dismissal in [. . .], that:

> As an initial matter, contrary to Protestor's assertion, there is nothing on the face of [Protestor's] proposal to indicate that its non-compliant HCF rate was a minor clerical error. Protest at 5. The alleged error is not a misplaced decimal point, turning 5% into 50% or 9.9% into 99%. It is not some form of an arithmetical error in carrying out a calculation. Nor is it the inadvertent failure to populate the HCF rate in the MS Excel pricing spreadsheet, leaving the CLIN blank and the Department uncertain whether Protestor intentionally did so with the intent to propose 0% or simply neglected to complete the spreadsheet.

AR 4084.

The government argues that the above quoted statement by DOJ merely distinguishes "a failure to fill in cells, an obvious error of omission, from a non-compliant HCF rate." Def.'s Reply Leidos 10. The court agrees that an "obvious error" does not mean that DOJ was conceding that Leidos' error was not material. Oral Argument 10:29:40-10:30:47.

*DynCorp Int'l LLC v. United States*, 76 Fed. Cl. 528, 545 (2007). Therefore, the court cannot conclude that it was arbitrary, capricious, or an abuse of discretion for DOJ to eliminate Leidos from the competition for a material error.

### 2. Leidos was not Treated Unfairly or Unequally

Finally, Leidos argues, similar to ManTech, that DOJ treated Leidos' proposal unequally when it eliminated Leidos from the competition but allowed other offerors with similar pricing issues to move on to Phase 2 of the competition. Leidos MJAR 18-20. As discussed, to demonstrate unequal or unfair treatment, a protestor must show that the federal agency treated similar defects in proposals differently. *TLT Const. Corp.*, 50 Fed. Cl. at 216. Leidos argues that DOJ allowed offerors with minor errors to proceed to Phase 2 and DOJ should have treated Leidos' omission of a unit price as a minor error and allowed Leidos to proceed to Phase 2 as well. According to Leidos, "DOJ applied the Solicitation's requirement unequally to exclude Leidos for a similar[] minor pricing error." Leidos MJAR at 14. Leidos concedes, however, that its unequal treatment claim turns on whether DOJ was arbitrary, capricious, or abused its discretion when it concluded that the blanks in Leidos' proposal were material errors. Oral Argument 12:43:00-12:43:50.

Having concluded that Leidos' failure to propose labor rates for the administrative specialist position was in fact a material pricing error, Leidos' argument based on unequal treatment necessarily fails. Because Leidos was eliminated for a material defect and Leidos does not allege that any other offeror that moved onto Phase 2 also had a

material pricing defect, it was not arbitrary, capricious, nor an abuse of discretion for DOJ to eliminate Leidos from the competition while allowing other offerors with minor pricing issues to move onto Phase 2.[17]

## CONCLUSION

For the foregoing reasons, the government's cross-motions for judgment on the administrative record are **GRANTED**, and both ManTech's and Leidos' motions for judgment on the administrative record are **DENIED**. Each party shall bear its own costs. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge

---

[17] To the extent that Leidos contends that DOJ allowed an offeror with an equally problematic pricing issue to proceed to Phase 2 of the competition, Leidos' contention is without merit. Specifically, Leidos points to the PEP report regarding the [. . .] proposal and notes that the PEP stated that [. . .] "[a]pplied an escalation rate of 1.0% in the Base Period years and an escalation rate of 0% in the Option period years." AR 2875. Leidos argues that this amounted to a "negative" escalation rate which was prohibited by the RFP. Although negative escalation rates were prohibited under the RFP, the government explained that a 0% escalation rate is not a "negative" escalation rate and thus did not violate the RFP. Moreover, the government noted that in DOJ's responses to vendor's questions regarding the procurement that the Bureau of Labor Statistics will determine the escalation rates for the actual contract's option periods. Oral Argument 12:40:40-12:42:06 (referencing AR 495 and 727). As such, the government argues that the PEP's conclusion that [. . .]'s pricing issue "presents limited risk to the Government" was reasonable. *Id.* The court agrees with the government that [. . .] did not violate the RFP and thus allowing [. . .] to proceed to Phase 2 did not amount to unequal treatment for Leidos.

# Appendix

## Table 19-0 from the RFP – AR 765:

RFP No. DJJD-17-RFP-1022      Attachment 1, Table 19-0      Labor Hour CLINs and Estimated Quantities

No OFFEROR entries in 19-0.

page 1 of 1

**TABLE 19-0 — ESTIMATED ANNUAL HOURS BY EXPERTISE LEVEL (See Attachment 2 for Labor Category Descriptions)**

| Root CLIN | DOJ SPECIFIED LABOR CATEGORY | Government's Site (Gov) | | | | Contractor's Site (Con) | | | | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Basic (B) | Senior (S) | Principal (P) | SME* (E) | Basic (B) | Senior (S) | Principal (P) | SME* (E) | |
| X001 | Program Manager | 240 | | | | 480 | | | | 720 |
| X002 | Task Manager | 960 | 960 | 960 | | 240 | 240 | 240 | | 3,600 |
| X003 | Project Manager | 960 | 960 | 960 | | 240 | 240 | 240 | | 3,600 |
| X004 | Business Process Engineer | 960 | 1,440 | 1,440 | 1,440 | 160 | 160 | 240 | 240 | 6,160 |
| X005 | Business Systems Analyst | 160 | 960 | 1,440 | 1,440 | 160 | 160 | 240 | 480 | 5,040 |
| X006 | Business Consultant | 160 | 960 | 1,440 | 1,440 | 160 | 160 | 240 | 480 | 5,040 |
| X007 | Service Delivery Manager | 160 | 960 | 1,440 | 1,440 | 160 | 160 | 240 | 480 | 5,040 |
| X008 | Information Services Consultant | 160 | 960 | 1,440 | 1,440 | 160 | 160 | 240 | 480 | 5,040 |
| X009 | Program Management Specialist | 240 | 960 | 1,440 | 1,920 | 160 | 160 | 240 | 240 | 5,360 |
| X010 | Enterprise Architect | 480 | 960 | 1,440 | 1,440 | 160 | 160 | 240 | 240 | 5,120 |
| X011 | Configuration/Data Management Analyst | 960 | 1,440 | 1,440 | | 160 | 160 | 160 | | 4,320 |
| X012 | Information Systems Security Specialist | 480 | 1,920 | 2,880 | 2,880 | 160 | 160 | 240 | | 8,960 |
| X013 | Computer Security Systems Specialist | 480 | 1,440 | 1,920 | 1,920 | 160 | 160 | 240 | 240 | 6,560 |
| X014 | Data Security Specialist | 240 | 480 | 480 | 480 | 160 | 160 | 160 | 160 | 2,320 |
| X015 | Information Systems Security Engineer | 240 | 480 | 480 | 480 | 160 | 160 | 160 | 160 | 2,320 |
| X016 | Cyber Security Specialist | 240 | 480 | 480 | 480 | 160 | 160 | 160 | 160 | 2,320 |
| X017 | Systems Security Architect | 160 | 480 | 960 | 480 | 160 | 160 | 160 | 160 | 2,720 |
| X018 | Systems Engineer | 480 | 1,440 | 1,920 | 1,920 | 160 | 160 | 240 | 240 | 6,560 |
| X019 | Systems Programmer | 480 | 960 | 960 | 960 | 240 | 240 | 240 | 240 | 4,320 |
| X020 | Systems Analyst | 960 | 1,920 | 1,920 | 1,920 | 160 | 160 | 160 | 160 | 7,360 |
| X021 | Software Engineer | 480 | 1,440 | 1,920 | 1,920 | 160 | 160 | 240 | 240 | 6,560 |
| X022 | Programmer Analyst | 240 | 1,920 | 1,440 | 960 | 160 | 160 | 160 | 160 | 5,200 |
| X023 | Programmer | 1,920 | 2,880 | 2,880 | 1,920 | 480 | 480 | 480 | 480 | 11,520 |
| X024 | Management Analyst | 960 | 960 | 960 | 960 | 160 | 160 | 160 | 160 | 4,480 |
| X025 | Integration & Test Engineer | 480 | 1,440 | 1,920 | 1,920 | 160 | 160 | 240 | 240 | 6,640 |
| X026 | Communications Specialist | 240 | 480 | 480 | 480 | 160 | 160 | 160 | 160 | 2,320 |
| X027 | Telecommunications Engineer | 240 | 960 | 1,440 | 960 | 160 | 160 | 160 | 160 | 4,240 |
| X028 | Network Engineer | 960 | 1,440 | 1,920 | 1,440 | 160 | 160 | 240 | 240 | 6,640 |
| X029 | Network Administrator | 160 | 480 | 960 | | 160 | 160 | 160 | | 2,080 |
| X030 | Quality Assurance Analyst | 960 | 960 | 960 | | 160 | 160 | 240 | | 3,600 |
| X031 | Software Tester | 480 | 480 | 480 | | 160 | 240 | 240 | | 2,080 |
| X032 | IV&V Test Engineer | 240 | 240 | 240 | 240 | 160 | 240 | 240 | 160 | 1,760 |
| X033 | Systems Administrator | 1,440 | 2,880 | 3,840 | 2,880 | 160 | 240 | 240 | 160 | 11,840 |
| X034 | Database Administrator | 1,440 | 1,920 | 1,920 | 1,920 | 160 | 160 | 160 | 160 | 7,840 |
| X035 | Web Designer | 480 | 960 | 960 | 960 | 160 | 160 | 160 | 240 | 4,080 |
| X036 | Web Software Developer | 960 | 1,920 | 1,920 | 1,440 | 240 | 480 | 480 | 480 | 7,920 |
| X037 | Web Content Administrator | 240 | 480 | 480 | | 160 | 160 | 160 | | 1,680 |
| X038 | Database Warehousing/Mining Specialist | 160 | 480 | 960 | 960 | 160 | 160 | 160 | 160 | 3,200 |
| X039 | Technical Support Specialist | 1,440 | 1,440 | 1,440 | | 160 | 160 | 160 | | 4,800 |
| X040 | Help Desk Manager | 960 | 1,440 | 1,440 | | 160 | 240 | 240 | | 4,480 |
| X041 | Help Desk Specialist | 3,840 | 3,840 | 3,840 | | 240 | 240 | 240 | | 12,240 |
| X042 | Training Specialist | 240 | 960 | 960 | 960 | 160 | 240 | 240 | 240 | 4,000 |
| X043 | Operations/Technical Support Manager | 960 | 1,440 | 1,440 | | 160 | 160 | 160 | | 4,320 |
| X044 | Administrative Specialist | 240 | 240 | | | 0 | | | | 480 |
| X045 | Technical Writer | 960 | 960 | 960 | | 480 | 480 | 480 | | 4,320 |
| X046 | Graphics Specialist | 960 | 960 | | | 240 | 240 | | | 2,400 |
| X047 | Emerging Technology Specialist | | 960 | 960 | 960 | | 240 | 240 | 240 | 3,600 |
| X048 | Cloud Architect | | 960 | 1,440 | 1,440 | | 240 | 240 | 240 | 4,560 |
| X049 | Solutions Architect | | 960 | 1,440 | 1,440 | | 240 | 240 | 240 | 4,560 |
| 55 | **Subtotal Est. Hours for FP CLINs** | 30,880 | 56,640 | 65,040 | 45,840 | 8,720 | 9,840 | 10,400 | 8,560 | 235,920 |
| X050 | Expert Consultant(s) - Various ** | 0 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 57 | **TOTAL HOURS FOR CLINs X001 - X050** | 30,880 | 56,640 | 65,040 | 45,840 | 8,720 | 9,840 | 10,400 | 8,560 | 235,920 |

\*   SME = Subject Matter Expert

\*\*   CLIN X050 is Not Fixed Priced in Table 19-1      Red Cells will Have No Estimated Hours and ARE NOT to be priced.

**Table 19-1.2 from the RFP (page 1 of 4) – AR 757:**

| RFP No. DJJD-17-RFP-1022 | | | | | Attachment 1, Table 19-1.2 | | | | | | | | ITSS-5 Labor Hour Rates | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Contractor Site | |
| Table 19-1.2  Contractor Site (Con) Labor Hour Rates | | Table 19-1.2 | | | ITSS-5 Rates – Basic Level Staff - Inclusive of any Contract Level Discount: | | | | | | | | page 1 of 4 | |
| | | | | | Contractor Site (Con) | | | | | | | | | |
| Root | DOJ SPECIFIED | | | Unit of | Work | Basic (B) | Basic (B) | Basic (B) | Basic (B) | Basic (B) | Ceiling | Escalation Rate | Basic (B) | Basic (B) |
| CLIN | LABOR CATEGORY | CLIN | Site | Work | Schedule | BP, Y1 x=0 | BP, Y2 x=1 | BP, Y3 x=2 | BP, Y4 x=3 | BP, Y5 x=4 | Multipliers | Applied | OP, Y1 x=5 | OP, Y2 x=6 |
| X001 | Program Manager | X001B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X002 | Task Manager | X002B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X003 | Project Manager | X003B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X004 | Business Process Engineer | X004B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X005 | Business Systems Analyst | X005B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X006 | Business Consultant | X006B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X007 | Service Delivery Manager | X007B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X008 | Information Services Consultant | X008B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X009 | Program Management Specialist | X009B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X010 | Enterprise Architect | X010B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X011 | Configuration/Data Management Analyst | X011B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X012 | Information Systems Security Specialist | X012B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X013 | Computer Security Systems Specialist | X013B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X014 | Data Security Specialist | X014B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X015 | Information Systems Security Engineer | X015B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X016 | Cyber Security Specialist | X016B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X017 | Systems Security Architect | X017B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X018 | Systems Engineer | X018B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X019 | Systems Programmer | X019B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X020 | Systems Analyst | X020B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X021 | Software Engineer | X021B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X022 | Programmer Analyst | X022B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X023 | Programmer | X023B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X024 | Management Analyst | X024B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X025 | Integration & Test Engineer | X025B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X026 | Communications Specialist | X026B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X027 | Telecommunications Engineer | X027B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X028 | Network Engineer | X028B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X029 | Network Administrator | X029B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X030 | Quality Assurance Analyst | X030B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X031 | Software Tester | X031B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X032 | IV&V Test Engineer | X032B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X033 | Systems Administrator | X033B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X034 | Database Administrator | X034B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X035 | Web Designer | X035B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X036 | Web Software Developer | X036B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X037 | Web Content Administrator | X037B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X038 | Database Warehousing/Mining Specialist | X038B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X039 | Technical Support Specialist | X039B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X040 | Help Desk Manager | X040B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X041 | Help Desk Specialist | X041B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X042 | Training Specialist | X042B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X043 | Operations/Technical Support Manager | X043B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X044 | Administrative Specialist | X044B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X045 | Technical Writer | X045B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X046 | Graphics Specialist | X046B | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | 0.000 | $0.00 | $0.00 |
| X047 | Emerging Technology Specialist | | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| X048 | Cloud Architect | | | | | | | | | | | | | |
| X049 | Solutions Architect | | | | | | | | | | | | | |
| X050 | This CLIN is not costed | | | | | | | | | | | | | |

**Table 19-1.2 from the RFP (page 2 of 4) – AR 758:**

RFP No. DJD-17-RFP-1022     Attachment 1, Table 19-1.2     ITSS-5 Labor Hour Rates<br>Contractor Site<br>page 2 of 4

| | | | | | | | | Table 19-1.2 | | ITSS-5 Rates - Senior Level Staff - Inclusive of any Contract Level Discount Contractor Site (Con) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basic (B) | Basic (B) | Basic (B) | | | Unit of | Work | Senior (S) | Senior (S) | Senior (S) | Senior (S) | Senior (S) | Ceiling | Senior (S) | Senior (S) | Senior (S) | Senior (S) | | |
| OP, Y3 x=7 | OP, Y4 x=8 | OP, Y5 x=9 | CLIN | Site | Work | Schedule | BP, Y1 x=0 | BP, Y2 x=1 | BP, Y3 x=2 | BP, Y4 x=3 | BP, Y5 x=4 | Multipliers | OP, Y1 x=5 | OP, Y2 x=6 | OP, Y3 x=7 | OP, Y4 x=8 |
| $0.00 | $0.00 | $0.00 | | | | | | | | | | | | | | |
| $0.00 | $0.00 | $0.00 | X002S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X003S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X004S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X005S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X006S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X007S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X008S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X009S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X010S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X011S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X012S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X013S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X014S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X015S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X016S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X017S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X018S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X019S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X020S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X021S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X022S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X023S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X024S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X025S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X026S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X027S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X028S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X029S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X030S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X031S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X032S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X033S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X034S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X035S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X036S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X037S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X038S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X039S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X040S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X041S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X042S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X043S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X044S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X045S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | X046S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | X047S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | X048S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | X049S | Con | 1 hour | Normal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.000 | $0.00 | $0.00 | $0.00 | $0.00 |

## Table 19-3.2 from the RFP (page 1 of 4) – AR 748

| | | | | | | | Basic (B) | Basic (B) | Basic (B) | Basic (B) | Basic (B) | Basic (B) | Basic (B) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
RFP No. DJJD-17-RFP-1022 — Attachment 1, Table 19-3.2 — page 1 of 4 — Extended Amounts — 19-0 Con Qtys x 19-1.2 Rates

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **No OFFEROR entries in 19-3.2** | | | | | | Extended | | | | page 1 of 4 | | |
| 2 | Table 19-3.2 | Contractor Site (Con) Labor Hour Totals | | Table 19-3.2 | | | ITSS-5 Amounts - Basic Level Staff - Inclusive of any Contract Level Discounts | | | | | | |
| 3 | | [19-0 Con Qtys x 19-1.2 Rates] | | | | | Contractor Site (Con) - Automatic Fill (no manual entries) | | | | | | |
| 4 | **Root** | **DOJ SPECIFIED** | | | Unit of | Work | Basic (B) | Basic (B) | Basic (B) | Basic (B) | Basic (B) | Basic (B) | Basic (B) |
| 5 | **CLIN** | **LABOR CATEGORY** | **CLIN** | **Site** | **Work** | **Schedule** | BP, Y1 x=0 | BP, Y2 x=1 | BP, Y3 x=2 | BP, Y4 x=3 | BP, Y5 x=4 | OP, Y1 x=5 | OP, Y2 x=6 |
| 6 | X001 | Program Manager | X001B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 7 | X002 | Task Manager | X002B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 8 | X003 | Project Manager | X003B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 9 | X004 | Business Process Engineer | X004B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 10 | X005 | Business Systems Analyst | X005B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 11 | X006 | Business Consultant | X006B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 12 | X007 | Service Delivery Manager | X007B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 13 | X008 | Information Services Consultant | X008B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 14 | X009 | Program Management Specialist | X009B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 15 | X010 | Enterprise Architect | X010B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 16 | X011 | Configuration/Data Management Analyst | X011B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 17 | X012 | Information Systems Security Analyst | X012B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 18 | X013 | Computer Security Systems Specialist | X013B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 19 | X014 | Data Security Specialist | X014B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 20 | X015 | Information Systems Security Engineer | X015B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 21 | X016 | Cyber Security Specialist | X016B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 22 | X017 | Systems Security Architect | X017B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 23 | X018 | Systems Engineer | X018B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 24 | X019 | Systems Programmer | X019B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 25 | X020 | Systems Analyst | X020B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 26 | X021 | Software Engineer | X021B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 27 | X022 | Programmer Analyst | X022B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 28 | X023 | Programmer | X023B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 29 | X024 | Management Analyst | X024B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 30 | X025 | Integration & Test Engineer | X025B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 31 | X026 | Communications Specialist | X026B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 32 | X027 | Telecommunications Engineer | X027B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 33 | X028 | Network Engineer | X028B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 34 | X029 | Network Administrator | X029B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 35 | X030 | Quality Assurance Analyst | X030B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 36 | X031 | Software Tester | X031B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 37 | X032 | IV&V Test Engineer | X032B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 38 | X033 | Systems Administrator | X033B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 39 | X034 | Database Administrator | X034B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 40 | X035 | Web Designer | X035B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 41 | X036 | Web Software Developer | X036B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 42 | X037 | Web Content Administrator | X037B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 43 | X038 | Database Warehousing/Mining Specialist | X038B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 44 | X039 | Technical Support Specialist | X039B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 45 | X040 | Help Desk Manager | X040B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 46 | X041 | Help Desk Specialist | X041B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 47 | X042 | Training Specialist | X042B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 48 | X043 | Operations/Technical Support Manager | X043B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 49 | X044 | Administrative Specialist | X044B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 50 | X045 | Technical Writer | X045B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 51 | X046 | Graphics Specialist | X046B | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 52 | X047 | Emerging Technology Specialist | | | | | | | | | | | |
| 53 | X048 | Cloud Architect | | | | | | | | | | | |
| 54 | X049 | Solutions Architect | | | | | | | | | | | |
| 55 | X050 | This CLIN is not costed | | | | | | | | | | | |
| 56 | | | | | | | | | | | | | |
| 57 | Totals Line | | | | | | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

## Table 19-3.2 from the RFP (page 2 of 4) – AR 74

RFP No. DJJD-17-RFP-1022

Attachment 1, Table 19-3.2

Extended Amounts
19-0 Con Qtys x 19-1.2 Rates

Table 19-3.2

Extended ITSS-5 Amounts - Senior Level Staff - Inclusive of any Contract Level Discounts
Contractor Site (Con) – Automatic Fill (no manual entries)

page 2 of 4

| Basic (B) OP, Y3 x=7 | Basic (B) OP, Y4 x=8 | Basic (B) OP, Y5 x=9 | CLIN | Site | Unit of Work | Work Schedule | Senior (S) BP, Y1 x=0 | Senior (S) BP, Y2 x=1 | Senior (S) BP, Y3 x=2 | Senior (S) BP, Y4 x=3 | Senior (S) BP, Y5 x=4 | Senior (S) OP, Y1 x=5 | Senior (S) OP, Y2 x=6 | Senior (S) OP, Y3 x=7 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $0 | $0 | $0 | | | | | | | | | | | | |
| $0 | $0 | $0 | X002S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X003S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X004S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X005S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X006S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X007S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X008S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X009S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X010S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X011S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X012S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X013S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X014S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X015S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X016S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X017S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X018S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X019S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X020S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X021S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X022S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X023S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X024S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X025S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X026S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X027S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X028S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X029S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X030S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X031S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X032S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X033S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X034S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X035S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X036S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X037S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X038S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X039S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X040S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X041S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X042S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X043S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X044S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X045S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | X046S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | X047S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | X048S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | X049S | Con | 1 hour | Normal | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | Totals | | | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |